**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY.**

**In re LEASE OF 200 PRESSURE DIFFERENTIAL CARS.**

**No. 70–347.**

United States District Court, E. D. Pennsylvania.

Dec. 12, 1973.

Richard Walkovets, Philadelphia, Pa., for Trustees, PCTC.

George G. Gallantz and James J. Fuld, New York City, for Bank of N. Y. and eight other trustees.

Richardson Blair, Philadelphia, Pa., for Girard Trust Bank.

Morris Raker, Boston, Mass., Richard Joyce Smith, North Branford, Conn., Trustee of New York, New Haven & Hartford.

## MEMORANDUM AND ORDER
## NO. 1399

FULLAM, District Judge.

Order No. 1389 in these proceedings, entered on December 3, 1973, authorizes the Trustees to acquire, by lease, 200 pressure differential freight cars, designed for use in transporting dry cement and similar materials. Half of the new cars are replacements for a like number of similar cars which, although leased only a year ago, have proved to be defective and unuseable. The remainder of the new cars represent an expansion of the Debtor's facilities. All of the new cars are needed in order to handle existing business. The record establishes that the need for such cars is likely to increase in the months and years ahead; that there would be a ready market for such cars in the event of cessation of the Debtor's rail operations; and that the revenues generated by the new cars would·be substantially in excess of the payments under the lease.

The Trustee of the New York, New Haven & Hartford Railroad Company (hereinafter "New Haven Trustee") has applied for a stay of Order No. 1389 pending appeal therefrom. In support of this motion, the New Haven Trustee points to various documents, reports, and procedural events in this reorganization proceedings which establish a general consensus that a standard, income-based reorganization of the Debtor is impossible in the absence of massive governmental intervention; and argues that none of the pending legislative proposals are likely to prove adequate, that the lease proposal might produce further erosion of the Debtor's estate and of the security interest of the New Haven Trustee in the event of a cessation of the Debtor's rail operations, hence consideration of the lease proposal should have been deferred until after this Court has held a hearing on (and presumably disposed of) a petition which was filed by the New Haven Trustee on October 9, 1973, seeking dismissal of the reorganization proceedings under § 77(g) of the Bankruptcy Act, and requesting that the proceeding be converted into an equity receivership.

The many uncertainties which becloud the present and future course of the Debtor's rail operations cannot be disregarded. But the lease transaction here under consideration must be evaluated in the light of these uncertainties, and cannot be postponed until the situation has been clarified. At the present time, the Trustees have common carrier responsibilities. Unless and until they are relieved of those responsibilities, they must be permitted to carry out their obligations in a responsible manner. There can be no doubt that the lease transaction covered by Order No. 1389 is in the best interests of the Debtor's estate, and of all of the parties to this reorganization, under present and reasonably foreseeable future circumstances; and the risk that this transaction might prove disadvantageous in the event of cessation of rail operations is minimal.

As in so many other situations confronting the parties to these proceedings, deferral of approval of this transaction, or a stay of approval pending appeal, would be equivalent to rejection of the transaction. The equipment is needed now, not six months or a year from now. The terms of the proposed lease are relatively favorable (equivalent to a net interest rate of 7½%). Under the provisions of the lease, the lessor has a right to cancel the transaction if Order No. 1389 is stayed (while the mere filing of an appeal from Order No. 1389 may arguably trigger this right of termination, the Trustees of the Debtor apparently are satisfied that only an appeal accompanied by a stay would actually result in cancellation). Thus, the grant of a stay would have a substantial

924

adverse effect upon the Debtor's ability to provide needed rail service, would deprive the Debtor's estate of much needed revenues, and would be likely to render the ultimate acquisition of this equipment considerably more expensive. I am satisfied that granting a stay of Order No. 1389 would not be in the best interests of the Debtor's estate, or of any of the parties to this reorganization, including the New Haven Trustee.

Counsel for the New Haven Trustee has made it reasonably clear that his real concern is not with this particular lease transaction, but with the fact that his dismissal petition has not been acted upon. At this writing, however, Congress is actively engaged in the final stages of enactment of comprehensive legislation dealing with the problems of railroads in the Northeastern section of the country. It would be unrealistic to expect the Interstate Commerce Commission to make its required recommendations concerning the 77(g) petition when significant legislative changes appear imminent. And there is no reason to doubt that the Congress is aware of the need for prompt action.

The application for a stay of Order No. 1389 will be denied.